## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

LM INSURANCE CORPORATION, )
                                          )
                  Plaintiff,              )
                                          )
v.                                        )                CV422-011
                                          )
HALLELUYAH RESTORATION,    )
LLC,                                      )
                                          )
                  Defendant.              )

## ORDER

Before the Court is Plaintiff LM Insurance Corporation's ("LM") "Motion to Strike Expert Report of Edward J. Priz and Exclude Proposed Expert Testimony."  Doc. 26.  Defendant Halleluyah Restoration, LLC ("Halleluyah") responded, doc. 28, and LM replied, doc. 30.  For the following reasons, LM's motion is **GRANTED, in part**, and **DENIED, in part**.  Doc. 26.

## BACKGROUND

LM alleges that it provided two workers' compensation insurance policies to Halleluyah, an exterior renovation business.  Doc. 5 at 5.  As discussed more fully below, the policies incorporated provisions of a manual generated by the National Council on Compensation Insurance

1

("NCCI") by reference. *See, e.g.*, doc. 26-1 at 7-8 (Halleluyah's expert explains NCCI manual incorporation). LM subsequently conducted an audit of Halleluyah and determined that Halleluyah inaccurately characterized several of its laborers as independent contractors when it applied for the policies. Doc. 5 at 5-6; *see also* doc. 26 at 2. Accordingly, Halleluyah "did not include these employees in its [policy] applications", which resulted in lower premiums. Doc. 5 at 6, doc. 26 at 2. The audit revealed that Halleluyah was unable to produce documents demonstrating the type of work performed by its laborers, and to explain large cash withdrawals in its records. Doc. 5 at 6. LM filed this breach of contract action against Halleluyah seeking over $700,000 in additional premiums. *Id.* at 7-9.

Halleluyah seeks to offer the expert testimony of Edward J. Priz, a forensic premium auditor and workers' compensation insurance underwriting expert. *See* doc. 26-1 at 16 (Priz's curriculum vitae); *id.* at 1-15 (Priz's report). In his report, Priz renders 25 specific opinions regarding, e.g., the accuracy of LM's calculation of additional premiums, and LM's determination that Halleluyah inaccurately characterized its laborers as independent contractors. *See id.* at 4-6 (Priz lists his 25

specific opinions); *id.* at 7-15 (Priz's report elaborates on the listed opinions).  LM asks the Court to exclude all of Priz's proposed testimony under Federal Rule of Evidence 702.  Doc. 26 at 1.  Halleluyah argues that all of Priz's testimony is admissible.  Doc. 28 at 8.

## ANALYSIS

Federal Rule of Evidence 702 compels the Court to perform a "gatekeeping" function concerning the admissibility of expert scientific evidence.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)).  In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and

helpfulness by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592, n.10.

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260-61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").  But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, "the reliability criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261 (emphasis omitted).  "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).  These

factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Id.* at 1261.

Expert testimony must also assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260). "Expert testimony which does

not relate to any issue in the case is not relevant and, ergo, non-helpful."

*Id.* (internal quotations omitted) (quoting *Daubert*, 509 U.S. at 591).

Although "[a]n opinion that embraces a legal conclusion is inadmissible

because it is unhelpful to the trier of fact", *Moore v. Wright Med. Tech.,*

*Inc.*, 2016 WL 1316716, at \*9 (S.D. Ga. Mar. 31, 2016) (citing Fed. R.

Evid. 704 advisory committee's note), "[a]n opinion is not objectionable

just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

LM groups Priz's 25 specific opinions in four categories,[1] and argues

that each category is inadmissible:

> First, Mr. Priz would like to testify that LM incorrectly
> determined that Halleluyah's laborers were employees, not
> independent contractors, under Georgia employment law.
> [Cit.]
>
> Second, Mr. Priz would like to testify that LM applied
> incorrect NCCI classification codes to the work being
> performed by Halleluyah's laborers. [Cit.]
>
> Third, having determined that Halleluyah's laborers were
> actually independent contractors, [Priz] would like to
> testify that the policies do not permit LM to charge
> additional premiums related to those contractors. [Cit.]

---

[1] The four categories discussed in LM's brief are not quotations from Priz's report;
they are LM's characterization of Priz's testimony. *See* doc. 26 at 3. As discussed
more fully below, although the Court agrees that these categories encompass some of
Priz's opinions, the Court cannot conclude that they encompass all of his opinions.

> And, finally, [Priz] has performed his own audit of Halleluyah's premiums in line with the above-described assumptions. [Cit.]

Doc. 26 at 3 (formatting altered); *see also* doc. 28 (Halleluyah does not expressly dispute this categorization). LM argues that each of these categories are unhelpful "legal conclusions" which infringe on the roles of the judge and jury. *See* doc. 26 at 6-11. It contends that the opinions amount to testimony that "LM failed to adhere to [the terms of the policies]", which is an improper subject for expert testimony because it "is a legal issue . . . involv[ing] contract interpretation." Doc. 30 at 4. Halleluyah counters that the testimony merely "assist[s] the trier of fact in sorting through the labyrinth of industry customs and jargon" related to the "highly technical" NCCI manual, doc. 28 at 5, and clarifies "industry standards", *id.* at 7.[2]

Although "[a]n expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *Armstead v. Allstate Prop. & Cas. Ins. Co.*, 2016 WL 4123838, at *4 (N.D. Ga. July 1, 2016) (quoting *United States v.*

---

[2] LM's motion includes language suggesting "qualifications" and "reliability" challenges but does not explicitly raise or fully brief the issues. *See, e.g.*, doc. 26 at 7; *but see* doc. 30 at 2 (in its reply, LM summarizes its argument as a "helpfulness" challenge).

*Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).  Under Georgia law, which governs in this removed diversity action, *see Jenkins v. CLJ Healthcare, LLC*, 481 F. Supp. 3d 1313, 1319 (S.D. Ga. 2020), "[t]he question of interpretation of the contract is for the jury, and the question of legal effect is for the judge.  In neither case do we permit expert testimony." *Armstead*, 2016 WL 4123838, at *4 (quoting *Plantation Pipeline Co. v. Continental Cas. Co.*, 2008 WL 4737163, *7 (N.D. Ga. July 31, 2008)). "[Q]uestions of fact in contract interpretation arise only upon a finding of ambiguity. . . .  Expert testimony purporting to interpret the terms of a contract is therefore proper only after a court has determined contractual language to be ambiguous."  *S.-Owners Ins. Co. v. Tasman Servs. LLC*, 2022 WL 4290437, at *4 (M.D. Fla. Sept. 16, 2022) (citations omitted).[3] Courts have also recognized that in certain circumstances, expert testimony regarding a contract may be admissible if there is a "need to

---

[3]  Although the *Tasman* case involved an application of Florida substantive law, federal courts applying Georgia law have articulated a similar standard for expert testimony regarding ambiguous contract provisions.  *See, e.g.*, *In re Covington Lodging Inc.*, 2021 WL 2492849, at *2 (Bankr. N.D. Ga. June 17, 2021) ("While an expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation, [Cit.], the construction of a contract is a matter of law for the court.  [Cit.]  If, however, a contract is ambiguous, interpretation is a factual matter and expert opinion may be appropriate." (quotations and citations omitted)); *see also Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1230-31 (11th Cir. 2017) (under Georgia law, the courts must decide whether a contract is ambiguous, but a jury must resolve that ambiguity).

clarify or define terms of art, science, or trade[.]" *S.E.C. v. Goldsworthy*, 2008 WL 2943398, at *4 (D. Mass. Jan. 3, 2008) (citation omitted); *see also Fair Isaac Corp. v. Fed. Ins. Co.*, 447 F. Supp. 3d 857, 872-73 (D. Minn. 2020) (although "unambiguous contract language is interpreted by the court as a matter of law[,] . . . [c]ourts have frequently recognized the value of expert testimony defining terms of a technical nature and testifying as to whether such terms have acquired a well-recognized meaning in the business or industry." (quotations and citations omitted)).

LM asserts that neither Halleluyah nor Priz maintain that any term in the policies is ambiguous, doc. 26 at 10, and Halleluyah does not contest that assertion. *See generally* doc. 28.  Accordingly, the Court must determine whether Priz's testimony permissibly clarifies an industry standard or the meaning of specialized insurance contract terms, or impermissibly interprets the contract. *See Golden Bear Ins. Co. v. Evanston Ins. Co.*, 2021 WL 2481667, at *4 (D. Nev. June 17, 2021) ("Here, the question of whether the insurance contract is ambiguous is not before the Court.  Thus, if [the insurance expert's] opinions are offered to explain or interpret an allegedly ambiguous insurance

contract, then his opinions are, at best, premature because no determination of ambiguity has been made.").

The four categories of testimony (as characterized by LM) constitute unhelpful legal conclusions involving contract interpretation. The four categories effectively encompass testimony regarding (1) whether LM correctly determined that Halleluyah's laborers were "employees" under the policies, (2) whether LM applied improper "classification codes" from the NCCI manual, which is incorporated in the policies, in its evaluation of Halleluyah, (3) whether LM can charge Halleluyah additional premiums under the policies, and (4) the correct premiums LM should have charged had it acted pursuant to the policies.[4] *See* doc. 26 at 3. In *Jenkins*, this Court excluded similar testimony amounting to an expert's "interpretation of the insurance policy", and opinion on whether the policy obligated the insurance company to take a specific action: defend an entity. 481 F. Supp. 3d at 1316 n.1 (Baker, J.). The Eastern District of Pennsylvania applied similar reasoning in resolving a *Daubert* challenge to Priz's testimony:

---

[4] Halleluyah does not appear to specifically respond to LM's challenge to Priz's "independent audit" opinions. *See generally* doc. 28.

> [T]he Court will not allow Mr. Priz to opine as to whether the
> audits at issue were conducted in compliance with the
> governing law, as he is not qualified to do so, and it is for the
> factfinder to apply the facts established through competent
> evidence to the governing law. . . . The Court, in its role as
> gatekeeper, cannot permit the testimony of Mr. Priz regarding
> whether Defendants conducted a proper audit to the extent
> that it requires him to describe, apply, or *interpret the relevant
> law or the contract* entered into by the parties.

*NBL Flooring, Inc. v. Trumball Ins. Co.*, 2013 WL 5692384, at *3 (E.D.

Pa. Oct. 18, 2013) (emphasis added); *cf. Golden Bear Ins. Co.*, 2021 WL

2481667, at *6 ("[M]atters such as whether coverage exists for certain

claims, application of various insurance regulations, and whether an

insurer acted with proper cause for its actions are not permissible

matters for expert opinion in bad faith cases because they involve legal

issues." (citation omitted)).  Accordingly, Priz may not testify that LM

took some action that was inconsistent with the insurance policies (or the

NCCI manual incorporated by the policies), or that the policies required

it to take some action.

Halleluyah argues that Priz's opinions regarding whether LM

"violated provisions of the [NCCI] manual" are not unhelpful legal

conclusions because experts may testify regarding whether an insurer

complied with industry standards, and the NCCI manual is an "industry

publication." Doc. 28 at 2; *see also id.* at 5 ("But how else would a violation of the NCCI [m]anual's provisions be proved, if not through the testimony of an expert such as Mr. Priz?"). Halleluyah is correct that "an expert may be able to offer an opinion as to whether one party or another acted in compliance with industry standards[.]" *R & R Int'l, Inc. v. Manzen, LLC*, 2010 WL 3605234, at *19 (S.D. Fla. Sept. 12, 2010). However, even if Priz's testimony relates to an industry standard, his report indicates that he intends to testify that LM violated the policies because it did not comply with the NCCI manual, which is expressly incorporated in the policies. *See, e.g.,* doc. 26-1 at 9 ("Thus, the action by LM . . . is not consistent with NCCI manual rules and thus not consistent with the provisions of the policies in question."). In *In re Com. Money Ctr., Inc.*, an insurance expert sought to testify that an insurer failed to comply with its contract and industry custom. 737 F. Supp. 2d 815, 832 (N.D. Ohio 2010). The Court explained that although the expert could testify about the "content and scope" of industry standards, he could not testify "as to [the insurer's] 'breach' of the standards" because they were expressly incorporated in the policy. *Id.* at 833. A district court in the Eleventh Circuit applied similar reasoning when it allowed an expert to

testify about "insurance industry standards and practices" but excluded testimony that other insurance companies in the industry would interpret a specific policy provision the same way as the insurer-defendant. *Lemons v. Principal Life Ins. Co.*, 2021 WL 3508685, at *8 (N.D. Ala. Aug. 9, 2021).[5]

Halleluyah also argues that Priz seeks to offer admissible testimony which clarifies industry-specific terminology. *See* doc. 28 at 5. Halleluyah, however, only cites three examples of specific terms that it asserts Priz will clarify: "classification," "assignment," and "experience modification." *Id.* Further, LM correctly notes in its reply that Priz's report does not specifically purport to clarify these three terms. Doc. 30 at 3; *see generally* doc. 26-1 at 1-15. Cursory review of Priz's report, however, indicates that he does seek to offer *some* useful explanatory testimony regarding, e.g., insurance companies' incorporation of the

---

[5] Two other courts' discussions of similar insurance expert testimony bolster the Court's conclusion. In *Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*, the court suggested that if an insurance policy incorporates industry standards, "[t]estimony on what those standards say or mean would be testimony about what the [policy] says or means, which would be [inadmissible] contract interpretation." 2022 WL 4448854, at *7 (D. Colo. Sept. 23, 2022). Similarly, in *Eaton v. Ascent Res. - Utica, LLC*, the court suggested that although an expert did not opine that industry guidelines "dictate lesser charges" under the policy, that opinion would be inadmissible if the expert rendered it. 2021 WL 3398975, at *5 (S.D. Ohio Aug. 4, 2021).

NCCI manual under the Georgia Assigned Risk Plan.  Doc. 26-1 at 7-8.
The Court declines to take the "drastic" step of excluding all of Priz's
testimony on this basis.  *Bendik v. USAA Cas. Ins. Co.*, 2019 WL 9466018,
at *2 (M.D. Fla. Oct. 25, 2019).   If Priz seeks to clarify an industry
standard or specialized term, that testimony is admissible to the extent
it otherwise passes muster under *Daubert* and the Federal Rules of
Evidence.

Finally, the Court is unpersuaded by Halleluyah's attempt to
analogize this case to *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001),
and *United States v. Gold*, 743 F.2d 800 (11th Cir. 1984).  *See* doc. 28 at
4, 6.  In *Maiz*, the Eleventh Circuit concluded that a forensic accounting
expert could render opinions regarding "the effect of disputed provisions"
of two agreements.  *Maiz*, 253 F.3d at 666-67.  The court, however,
explained that "to the extent [the expert] spoke of the contracts, he
generally did so in the context of setting forth or explaining reasonable
assumptions he was asked to make by counsel."  *Id.* at 667.  Here, Priz's
report and Halleluyah's response make clear that Priz intends to discuss
the policies and incorporated NCCI manual to opine that LM violated the
policies.  *See, e.g.*, doc. 26-1 at 9; doc. 28 at 2.

Halleluyah's reliance on the *Gold* case is also unpersuasive.  In that criminal Medicare fraud case, the Eleventh Circuit found that the trial court did not err in admitting a Health and Human Services Special Agent and a Health Care Financing Agency official's testimony regarding whether particular claims qualified for reimbursement under Medicare. 743 F.2d at 817.  *Gold* did not involve an insurance expert opining on a party's obligation under an insurance policy, which is a "question[ ] of law that must be decided by the Court." *Jenkins*, 481 F. Supp. 3d at 1316 n.1. Accordingly, to the extent Priz seeks to testify that LM violated the policies or NCCI Manual incorporated by the policies, or that the policies required it to take some action, that testimony is **EXCLUDED**.

Having discussed the inadmissibility of Priz's unhelpful legal conclusions, the Court will address the specific opinions quoted in LM's *Daubert* motion.  *See* doc. 26 at 6-10.  LM quotes several of Priz's specific opinions which constitute inadmissible legal conclusions regarding, e.g., whether LM acted in accordance with the policies, or whether LM is required to take some action under the policies:

> The 2019-2020 additional premium charges are also based on a unilateral decision by LM to place all construction payroll into Class 5645 [as defined by the NCCI Manual] even though this classification assignment is not consistent with the actual operations of [Halleluyah].

Doc. 26 at 8 (quoting doc. 26-1 at 4).

> It is my opinion that it is improper and incorrect for LM to charge additional premiums for [Halleluyah] for independent contractors that provided Certificates of Insurance ["COI"].

Doc. 26 at 9 (quoting doc. 26-1 at 4).

> Even for those [Halleluyah] subcontractors where no Certificates were provided, the [NCCI] [M]anual rule makes it clear that this only applies "in those states where workers compensation laws provide that a contractor is responsible for the payment of compensation benefits to employees of its uninsured contractors."

Doc. 26 at 9 (quoting doc. 26-1 at 4).

Since these opinions amount to Priz's "interpretation of the insurance polic[ies] and whether the polic[ies] obligated" LM to take certain actions, they are **EXCLUDED**. *Jenkins*, 481 F. Supp. 3d at 1316 n.1; *see also N. Am. Specialty Ins. Co. v. Wells*, 2013 WL 4482455, at *2 (S.D. Ga. Aug. 19, 2013) (Moore, J.) ("The Eleventh Circuit and courts within the Eleventh Circuit have excluded expert testimony where it is simply a reiteration or recasting of a parties' interpretation of a contract.").

LM, however, quotes several specific opinions in its discussion of Categories 1-3 which do not obviously constitute inadmissible contract interpretation:

> The additional premium charges are based, in part, upon LM making unilateral legal decisions regarding the status of independent contractors used by [Halleluyah][.]

Doc. 26 at 6 (quoting doc. 26-1 at 4).

> In my experience and training, premium auditors are not normally attorneys and lack training sufficient to offer reliable legal opinions and thus are not qualified to determine if the independent contractors used by [Halleluyah] are covered under Georgia Workers Compensation statutes[.]

Doc. 26 at 7 (quoting doc. 26-1 at 5).

> The manual definition for Class 5645 issued by NCCI explicitly states that this code is used only for companies performing framing and structural construction on residences.

Doc. 26 at 8 (quoting doc. 26-1 at 4).

> The [NCCI] manual definition for Class 5645 explicitly states that other kinds of carpentry work, which are not part of a project where framing or structural construction is being done, should properly be assigned to the specific classifications for that work.

Doc. 26 at 8 (quoting doc. 26-1 at 4).

17

> NCCI manual rules state that payments made to independent
> contractors should be excluded from payroll if a COI is
> provided.

Doc. 26 at 9 (quoting 26-1 at 5).

These opinions do not suggest that LM somehow misinterpreted or violated the policies; rather, they comment on, e.g., the basis for LM's determination of the laborers' status, premium auditors' training, and NCCI code classifications.  As the *NBL Flooring* Court explained, ". . . Priz is qualified to examine the audits and their supporting documentation and summarize the criteria he believes [LM] used to determine [Halleluyah's] premium charges[.] . . . [He] is also qualified to testify regarding the potential benefit an accurate premium audit provides to insured companies."  2013 WL 5692384, at *3 (distinguishing Priz's admissible descriptions of the criteria an insurer used to calculate premiums from his inadmissible opinions that it "used the wrong criteria" under the policy).  Absent a specific explanation from LM why these opinions impermissibly interpret the policies, the Court declines to exclude them.

LM also cites two ambiguous opinions in its discussion of Categories 1-3:

> It has been my experience that even experienced insurance professionals can lack a clear understanding of whether or when independent contractors in Georgia should properly be included or excluded from Workers Compensation insurance premiums of companies like [Halleluyah][.]

Doc. 26 at 7 (quoting doc. 26-1 at 5).

> NCCI manual rules do not allow for a COI to be disregarded by an insurer like LM.

Doc. 26 at 9 (quoting doc. 26-1 at 5).

To the extent Priz seeks to testify that LM's auditors violated the policies by incorrectly assessing Halleluyah's premiums, or that LM took an action inconsistent with the NCCI Manual incorporated by the polices, i.e., "disregard[ing]" a COI, that testimony is inadmissible contract interpretation. However, to the extent he seeks to opine on "insurance professionals[']" general expertise, or explain the text of a provision of the NCCI manual, the Court cannot conclude that those are unhelpful legal conclusions.[6]

---

[6] Although LM argues that all of Priz's testimony is inadmissible, neither LM nor Halleluyah discuss each of Priz's 25 specific opinions in their *Daubert* briefs. The Court declines to evaluate the admissibility of opinions not briefed by the parties. To be clear, however, the authority discussed above regarding inadmissible legal conclusions applies to all of Priz's testimony. To the extent Priz offers an opinion not discussed by the parties that, e.g., LM took some action that was inconsistent with the insurance policies or incorporated NCCI Manual, that testimony is **EXCLUDED**.

## CONCLUSION

In sum, Priz's opinions interpreting the insurance policies, including opinions that LM violated the policies, or was required to take some action by the policies, are **EXCLUDED**. The Court, however, declines to exclude all of Priz's testimony, since the Court can discern portions of his report that do not constitute inadmissible legal opinions. LM's "Motion to Strike Expert Report of Edward J. Priz and Exclude Proposed Expert Testimony" is therefore **GRANTED, in part**, and **DENIED, in part**. Doc. 26.

In a prior Order, the Court stayed all deadlines in this case pending disposition of the Motion to Strike, doc. 26. Doc. 35 at 1-2. The Clerk is therefore **DIRECTED** to lift the stay. The parties are reminded of their obligation to confer and submit a joint status report, including proposals for all deadlines remaining in the case, within 14 days from the date of entry of this Order. *Id.* at 2. While the parties are not required to submit a complete Rule 26(f) Report, they are **DIRECTED** to submit all information ordinarily required by the Form Rule 26(f) Report for use in

Judge    Baker    cases    located    on    the    Court's    website, www.gasd.uscourts.gov, under "Forms," that remains relevant.

**SO ORDERED**, this 8th day of March, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA