IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LM INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HALLELUYAH RESTORATION, LLC,<br><br>Defendant. | CIVIL ACTION NO.: 4:22-cv-11 |

**O R D E R**

Previously, the Court deferred ruling in part on Plaintiff's Motion for Default Judgment, (doc. 92), because the record did not sufficiently provide a basis for calculating Plaintiff's damages. (See doc. 93.) Plaintiff has since filed supplemental briefing and materials to address the inadequacies that prohibited the Court from fully disposing of the Motion. (Doc. 98.) After reviewing those materials (along with all other record materials) and based on the analyses set forth in its prior Order and below, the Court **GRANTS** the pending request for damages within the Motion. (Doc. 92.)

**BACKGROUND**

**I.    Review of Facts Relevant to Damages Determination**

In its previous Order, the Court provided a comprehensive summary of the facts in the record and as admitted through Defendant's default. (See doc. 93, pp. 1–5.) In brief, Plaintiff LM Insurance Corporation (hereinafter "Liberty Mutual") issued two workers' compensation insurance policies to Defendant Halleluyah Restoration, LLC, (hereinafter "Halleluyah"). (Doc. 5.) In this lawsuit, Liberty Mutual alleges that Halleluyah breached the terms of those insurance

policies by providing inaccurate and/or incomplete information, which resulted in the premiums for each of the policies being set for deflated amounts. (Id.) Later, Liberty Mutual conducted audits and, based on additional information obtained during the audits, Liberty Mutual calculated the appropriate premiums for each policy and determined that Halleluyah owed $66,558 in additional premium for one policy and $655,120 in additional premium for the other policy. (Id. at pp. 5–6.) When Halleluyah failed to pay the outstanding amounts, Liberty Mutual filed this lawsuit, asserting a claim for breach of contract. (Id. at p. 7.)

## II.     The Court's Prior Order

In its Amended Complaint, Liberty Mutual asserts that, as a proximate result of Halleluyah's breaches, there remains due and owing to it additional workers' compensation premiums of "no less than $721,678." (Id. at pp. 8–9.) Due to its ongoing failure to retain counsel, Halleluyah has been in default since March 26, 2024. (Doc. 91.)

Liberty Mutual filed a Motion for Default Judgment, (doc. 92), which the Court reviewed in a December 11, 2024, Order, (doc. 93). In that Order, the Court determined (as it must in order to enter a default judgment) that it has jurisdiction over the case and that the facts sufficiently establish that Halleluyah is liable for breach of contract. (Id. at pp. 7–8.) Accordingly, Liberty Mutual is entitled to a default judgment. The Court, however, was unable to approve of the damages as requested by Liberty Mutual—or to otherwise calculate the appropriate amount of damages—based on the record before it. Specifically, the Court found that Liberty Mutual had not adequately explained and demonstrated how it had calculated its claimed damages amounts (i.e., the outstanding additional premium amounts it claims were due under each of the two policies). (Id. at p. 10.) The Court gave Liberty Mutual an opportunity to supplement the record

2

with additional materials to explain in more detail the calculations underlying the requested damages. Liberty Mutual has timely made such a filing. (Doc. 98.)

## DISCUSSION

In the Amended Complaint, Liberty Mutual stated that, "[b]ased upon the limited information and documents provided by Halleluyah during audits, [it] . . . determined that Halleluyah owed $66,558 in additional premium for [one] Policy . . . and $655,120 in additional premium for [the other] Policy . . . ." (Doc. 5, p. 6.) Thus, it claims, "[a]s a proximate result of Halleluyah's breaches, there remains due and owing to Liberty Mutual additional workers' compensation premiums of no less than $721,678 on the Policies." (Id. at p. 8.)

Once a court finds that default judgment is appropriate, it must make certain "that there is a legitimate basis for any damage award it enters[.]" Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also Faria v. Lima Inv. Sols. LLC, No. 6:19-CV-535-ORL-37GJK, 2019 WL 3044033, at *2 (M.D. Fla. June 24, 2019), report and recommendation adopted, No. 6:19-CV-535-ORL-37GJK, 2019 WL 3037796 (M.D. Fla. July 11, 2019) ("Unlike well-pleaded allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages."). A court must ensure an award is not a "completely unreasonable or speculative amount [ ] with no factual basis." Anheuser Busch, 317 F.3d at 1266. "[I]t remains incumbent on plaintiff to prove the amount of damages to which it is entitled." Vision Bank v. Hill, No. 10-0333, 2011 WL 250430, at *2 (S.D. Ala. Jan. 25, 2011). "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they come from." PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010)). Further, as the Eleventh Circuit Court of

Appeals explained, "despite Rule 55's permissive language, judgment of default awarding cash damages [cannot] properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Organizacion Miss Am. Latina, Inc. v. Urquidi, 712 F. App'x 945, 948 (11th Cir. 2017) (internal quotations omitted).

**I.      Previously-Submitted Evidence**

In support of its Motion for Default Judgment, Liberty Mutual provided an affidavit from Matt Ellisor, a forensic consultant with Liberty Mutual who was assigned the audits of the two policies. (Doc. 92-1, p. 1.) The Court reviewed the affidavit, in which Ellisor described the general formula used to calculate a workers' compensation insurance premium that is commensurate with the risk being insured. (Id. (describing the formula as "classification code (or rate) x payroll size (divided by 100) x experience modification factor ('mod')").) While he noted that "Halleluyah's modification factor for both polices was a 1.00 [and] therefore, this factor did not impact any premium calculations," Ellisor did not elaborate on how and what he determined the other two factors in this formula (the classification code and the payroll size) to be. He said only that his "calculations and determinations for each policy [are] incorporated into Liberty Mutual audit documents which are attached hereto as Exhibits 1 and 2." (Id. at p. 5.) Those exhibits were three pieces of correspondence sent to Halleluyah containing charts that purported to "show[] the difference, if any, between the prior policy's estimated premium and the policy's audited premium." (Id. at pp. 6, 10.) While the charts *listed* what appeared to be various classification codes and mods, they also listed factors that had not been referenced or explained to the Court (i.e., "exposure" and "Rate/$100"). The Court concluded that the exhibits—even when considered alongside Ellisor's testimony—offered, at best, an explanation in "summary fashion" and they failed to show how the post-audit premiums were calculated as well as how the differences

4

between the amounts paid for pre-audit premiums and the amounts owed for post-audit premiums were calculated. (Doc 93, pp. 11–12 (citing PNCEF, 740 F. Supp. 2d at 1294).)

With the Court's permission, Liberty Mutual has filed a supplemental affidavit of Matt Ellisor. (Doc. 98-1.) In that affidavit, Ellisor provides far more extensive detail about how each factor in the formula is determined and also, specifically, how each alleged damages amount (for each policy) was calculated.

## II.     How the Premiums are Generally Calculated

Consistent with his previous affidavit, Ellisor explains the following about the calculation process and how the amounts for the various factors of the formula are determined. According to Ellisor, "[p]remiums for workers' compensation insurance coverage[] in the assigned-risk market are generally calculated as follows:

> a. classification code (or rate) applicable to the work performed by the insured;
>      multiplied by
> b. payroll (or exposure)
>      divided by 100, and then multiplied again by
> c. the insured's unique experience modification factor ('Mod')."

(Id. at p. 3.)

The Mod "reflects the loss history of any insured" and "is calculated by the state-appointed administrator of the Georgia Plan, [the] National Council on Compensation Insurance ('the NCCI')." (Id.) "Liberty Mutual does not calculate or unilaterally apply a Mod to any policy." (Id.) According to Ellisor, for both policies at issue here, the Mod was 1.0, "meaning it was a neutral factor and, thus, had no effect on the calculation of the premium owed." (Id.)

"Classification codes and corresponding risk rate, both of which are promulgated by the NCCI, . . . depend on the type of work performed" by an employer's workforce, and "[d]ifferent jobs (classification codes) entail different levels of risk (risk rates)." (Id.) Ellisor explains that

5

"the insurance rates per classification code promulgated by the NCCI are submitted to and then set by the Georgia Department of Insurance." (Id.)

Finally, "[p]ayroll (or exposure) is the amount of money paid by the company for each type of work" performed by its workforce. (Id. at p. 4.) This amount is determined by reviewing records that the employer is expected to maintain and provide to the insurer.

### III.     Policy No. 018[1]

Ellisor's affidavit indicates that he reviewed the "limited information [he] had" and performed an initial audit of Policy No. 018, which resulted in an initial audited premium of $321,199. (Id.) Eventually, however, using information provided by Halleluyah, he calculated a "Revised Audited Premium" of $78,374 (which he notes was $242,825 less than the premium calculated in the initial audit). (Id. at p. 5.) He explains that the revised premium was calculated by "divid[ing] [Halleluyah's] non-clerical and sales payroll between four classification codes," which he lists (along with the corresponding rate for each) in his affidavit. (Id.) He then directs the Court to Exhibit A to his affidavit, as it lists the payroll amount (exposure) for each classification code and it also "shows that the premium is calculated by multiplying the exposure and rate together and then dividing that number by 100." (Id.) He also notes that the revised audited premium amount includes "nominal charges . . . including terrorism and an expense constant . . . [which are] charges [included] on all assigned risk policies . . . and total less than $750 to be added to the premium owed." (Id.)

Ellisor then points to Exhibit B, a "Statement of Account" for Policy No. 018, which "incorporates the calculations from Exhibit A, subtracting $242,825 [(the difference between the

---

[1] Liberty Mutual and Ellisor, in his affidavit, refer to policy number WC5-39S-370144-018 as "Policy No. 018." For consistency's sake, the Court will use this same abbreviation.

6

initial audited premium and the revised audited premium)] from the initial audited premium, and applies prior payments, credits and debits." (Id.) He points out that "Exhibit B reflects $66,558 owed for Policy No. 018." (Id.)

The Court has reviewed Exhibits A and B in conjunction with Ellisor's affidavit testimony and is satisfied that Liberty Mutual has adequately proven the amount of damages to which it is entitled with regard to Policy No. 018 by showing the Court "what those damages are, how they are calculated, and where they come from," PNCEF, 740 F. Supp. 2d at 1294. Accordingly, the Court **AWARDS** Plaintiff $66,558.00 in damages for Defendant's breach of contract as to Policy No. 018.

## IV. Policy No. 019[2]

Ellisor explains that, following the audit of Policy No. 018, Liberty Mutual advised Halleluyah that it would conduct an audit of Policy No. 019 after its full term and it warned Halleluyah to keep better records than it had been keeping for Policy No. 018 to avoid facing a much higher premium for that year. (Id.) Halleluyah, however, failed to do so. (Id. at p. 6.) "Because of Halleluyah's failure to comply with the audit, its refusal or inability to provide any documents to divide its labor force into multiple classification codes[,] and its refusal or inability to explain its use of its significant cash withdrawals, [Ellisor] had to complete an estimated audit for Policy No. 019." (Id.) Because he was "[u]nable to determine which employees were doing which work and using applicable NCCI code classification guidance, [Ellisor] placed all of Halleluyah's non-clerical and sales workforce into the governing class code for a construction company in Georgia, which is classification code 5645, and applied the insurance rate of $120.31

---

[2] Liberty Mutual and Ellisor, in his affidavit, refer to policy number WC5-39S-370144-019 as "Policy No. 019."

for such work as set by the Department of Insurance." (Id.) "Also, being unable to determine Halleluyah's use of its significant cash withdrawals, [he] placed all of the cash withdrawals into the construction payroll for Halleluyah." (Id.) Based on conversations with the insured and review of bank records, he calculated Halleluyah's construction payroll to be $540,637, plus some clerical and sales payroll. (Id. at p. 7.) Ellisors direct the Court to Exhibit C, which details his calculations and how he multiplied the payroll by the applicable rate, "resulting in a post-audit premium of $656,705, including nominal charges." (Id.)

Ellisor then points to Exhibit D, which is a "Statement of Account" for Policy No. 019, which "incorporates the calculations from Exhibit C and applies prior payments and a small credit from Policy No. 018." (Id.) He points out that "Exhibit D reflects $655,120 owed for Policy No. 019." (Id.)

The Court has reviewed Exhibits C and D in conjunction with Ellisor's affidavit testimony and is satisfied that Liberty Mutual has adequately proven the amount of damages to which it is entitled with regard to Policy No. 019 by showing the Court "what those damages are, how they are calculated, and where they come from," PNCEF, 740 F. Supp. 2d at 1294. Accordingly, the Court **AWARDS** Plaintiff $655,120.00 in damages for Defendant's breach of contract as to Policy No. 019.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the pending request for damages in Plaintiff's Motion for Default Judgment. (Doc. 92.) The judgment against Defendant totals $721,678.00. All writs and processes necessary or appropriate for the enforcement or collection of this Final Default Judgment or the costs of court may be issued as necessary. There being no

further requests for relief pending before the Court, the Court **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case.

    **SO ORDERED**, this 10th day of January, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA